UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR MONEY LAUNDERING INVESTIGATION | ML No: 22-204 |

Reference:   DOJ Ref. # CRM-182-76262

### APPLICATION OF THE UNITED STATES FOR AN ORDER FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Ecuador. In support of this application, the United States asserts:

### RELEVANT FACTS

1.  The Central Authority of Ecuador, the Attorney General's Office, submitted a request for assistance (the Request) to the United States, pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters, Aug. 27, 1992 – Feb. 28, 2006, S. Treaty Doc. No. 105-25 (the Treaty).

2.  As stated in the Request, the Anti-Money Laundering Unit of the Pichincha Provincial's Prosecutor's Office (Anti-Money Laundering Unit), in Ecuador, is investigating

Joza Ortega Lisett Liliana (Lisett) for money laundering, which occurred between in or about 2016 and 2019, in violation of the criminal laws of Ecuador, specifically, Section 317 of the Integral Organic Criminal Code. Under the Treaty, the United States is obligated to assist in response to the Request.

3. According to Ecuadorian authorities, from 2016 to 2019, Lisett, an Ecuadorian citizen and New York state resident in the United States, transferred funds illegally obtained from a Medicaid fraud scheme in New York in the United States to Ecuador and purchased personal property and residential and commercial real estate in Ecuador. On February 24, 2021, Lisett, along with co-defendants Sean Ally (Ally), Shamiza Ally, Purple Heart Association, Inc. (Purple Heart), Heart Holdings, Corp. (Heart Holdings), and SA & SB Enterprises, LLC (SASB), were indicted and charged with grand larceny in the first degree and money laundering. Lisett, along with the co-defendants, pled guilty in March 2021 and are pending sentencing in Queens Supreme Court in New York.

4. Specifically, Lisett, as a driver for Purple Heart, and Sean Ally (Ally), owner of Purple Heart, stole over 1 million USD from the New York Medicaid program for billing fake transportation services that were never provided. Specifically, the New York Medicaid program (Medicaid program) reimburses transportation providers for transporting Medicaid patients to and from covered medical services. Between September 2017 and early May 2019, Purple Heart submitted claims to and collected from the Medicaid program over 29 million USD for allegedly providing transportations services to Medicaid patients in and around New York City. However, New York authorities found and alleged that over 19 million USD of that amount was for unmatched services for which there are no corresponding bills for medical treatment for the patients who purportedly received the transportation services. These illegally obtained funds

were funneled through bank accounts to the individual defendants and Heart Holdings and SASB, both shell companies controlled by several defendants. The illegally obtained funds were used to make multiple real estate purchases. Additionally, Lisett transferred illegal obtained funds to bank accounts in Ecuador as well as used the funds to purchase furniture, a residential home, and three commercial real estate buildings in Ecuador.

5. The Financial and Economic Analysis Unit submitted a Report of Unusual and Unjustified Operations (Report) to the Attorney General's Office in Ecuador. Based upon the information included in the report as well as the information about the New York Medicaid fraud case, the Anti-Money Laundering Unit, on January 21, 2020, opened criminal and civil investigations into Lisett's transfer of illegally obtained funds from the United States to Ecuadorian bank accounts and purchase of personal property and residential and commercial real estate for approximately 640,000 USD in Ecuador.

6. The Report states the Ecuadorian Internal Revenue Service has no record of tax information from 2016 to 2019 for Lisett in connection with dependents or clients. However, in 2019, she registered income of 1,600,111 million USD in the Ecuadorian banking system. Approximately 1,584,412 of that total amount corresponds to transfers received from the United States.

7. According to the Report, DNA2407 Transportation Corp. (DTC) was incorporated on January 17, 2019, in New York in the United States, and Daniel Mejia (Mejia) is DTC's director. Heart Holdings was incorporated on October 22, 2018, in New York in the United States, and Lisett is Heart Holdings's director. DTC and Mejia received checks issued by Purple Heart and Heart Holdings. Purple Heart and Heart Holdings issued checks to other natural persons listed as payers of transfers sent from the United States to Lisett and other third

parties. Specifically, Cecilia Victoria Fuentes (Fuentes) received checks issued by Purple Heart.

    8.    Additionally, the report described the following transfers:

    a. Six transfers, equaling 616,962 USD, were made from DTC's Deutsche Bank Trust Company (DBTC) bank account, account number xxxxxx6010, in the United States;

    b. On June 2, 2019, August 2, 2019, and August 13, 2019, three separate transfers, equaling 544,980 USD, were made from Lisett's bank account at Bank of New York Mellon (Mellon) in the United States, account number xxxxxx3510, to Lisett's bank accounts in Ecuador; and

    c. On May 27, 2019 and in June 2019, Fuentes sent two transfers, equaling 211,572 USD, from bank accounts in her name held at DBTC, account number xxxxxx1652, and Bank of America, N.A. (BOA), account number xxxxxxxx0957, in the United States.

    9.    To trace the transfers of the illegally obtained funds, Ecuadorian authorities assert bank records from the aforementioned U.S. banks and tax records, if any, from the New York Department of Taxation and Finance (or other state tax government authorities) are relevant to their money laundering investigation in that the records will further clarify the funds obtained and income earned and reported by Lisett, Purple Heart, Heart Holdings, and DTC in the United States and establish the amount of the funds distributed to the Ecuadorian financial system.

    10.    To further the investigation, Ecuadorian authorities have asked U.S. authorities to provide bank records pertaining to DTC's DBTC bank account, account number xxxxxx6010, Lisett's Mellon bank account, account number xxxxxx3510, and Fuentes's bank accounts held at DBTC, account number xxxxxx1652, and BOA, account number xxxxxxxx0957, as well as state tax records for Lisett and the aforementioned companies from the New York Department of Taxation and Finance (or other state tax government authorities), if they exist.

## LEGAL BACKGROUND

11. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968). A multilateral convention is a treaty under U.S. law.

12. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*      \*      \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*      \*      \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

13. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

14. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4] Upon

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . . Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA." Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  *See* 18 U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

15. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).

### REQUEST FOR ORDER

16. The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the State

---

[5] The term "federal judge" includes a magistrate judge. <u>See</u> 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

Prosecutor General Office, the designated Central Authority, in Ecuador and seeks assistance in the investigation of money laundering – a criminal offense in Ecuador. The requested Order is necessary to execute the Request, and the assistance requested, i.e., production of bank and official records, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

17. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters. In this matter, Ecuador has asked the Government to keep the Request confidential.

18. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the

recipient(s) of any given commissioner subpoena.

19. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence and authorizing the undersigned to order the relevant person(s) and/or entity(ies) not to notify any person(s) or entity(ies) of the commissioner's subpoena and its contents for a period of two years from the Court's Order, and sealing this application and the Court's Order, until otherwise issued by the Court.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _____
Angela S. George
Trial Attorney
D.C. Bar Number 470567
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-4653
Angela.George@usdoj.gov